MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
BERNARDINA ACTEOPAN and ANA
KAREN RAMIREZ ACTEOPAN,
*individually and on behalf of others similarly*
*situated,*

**COMPLAINT**

*Plaintiffs*,

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

-against-

MAHABIR ENTERPRISES LLC (D/B/A
SOPHIE'S CUBAN CUISINE), SOPHIE'S
RESTAURANT #3 LLC (D/B/A SOPHIE'S
CUBAN CUISINE), PATRICIA MAHABIR
SANTOS, EDUARDO MAREO, VIVIANA
SANTACRUZ, MANUELA MATOS,
JUANITO DOE, HELEN DOE, and SELENA
DOE,

**ECF Case**

*Defendants.*
------------------------------------------------------X

Plaintiffs Bernardina Acteopan and Ana Karen Ramirez Acteopan, individually and on

behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys,

Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Mahabir

Enterprises LLC (d/b/a Sophie's Cuban Cuisine), Sophie's Restaurant #3 LLC (d/b/a Sophie's

Cuban Cuisine), ("Defendant Corporations"), Patricia Mahabir Santos,  Eduardo Mareo,  Viviana

Santacruz,  Manuela Matos,  Juanito Doe,  Helen Doe, and  Selena Doe, ("Individual Defendants"),

(collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Mahabir Enterprises LLC (d/b/a Sophie's Cuban Cuisine), Sophie's Restaurant #3 LLC (d/b/a Sophie's Cuban Cuisine), Patricia Mahabir Santos, Eduardo Mareo, Viviana Santacruz, Manuela Matos, Juanito Doe, Helen Doe, and Selena Doe.

2.       Defendants own, operate, or control two Cuban restaurants, located at 28 East 23rd Street, New York, New York 10010 (hereinafter "the 23rd Street location") and 73 New Street, New York, New York 10004 (hereinafter "the New Street location") under the name "Sophie's Cuban Cuisine."

3.      Upon information and belief, individual Defendants Patricia Mahabir Santos, Eduardo Mareo, Viviana Santacruz, Manuela Matos, Juanito Doe, Helen Doe, and Selena Doe, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurants as a joint or unified enterprise.

4.      Plaintiffs were employed as waitresses at the restaurants located at 28 East 23rd Street, New York, New York 10010 and 73 New Street, New York, New York 10004.

5.      Plaintiffs were ostensibly employed as waitresses. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to cleaning the bathrooms and walls, sweeping and mopping the floors, bringing down the chairs, wiping down the tables, making empanadas and sandwiches, preparing green sauces, turning chairs upside down, carrying boxes of soda, washing towels, putting together delivery boxes, and refilling the refrigerators (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

9.      Defendants employed and accounted for Plaintiffs as waitresses in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

10.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

11.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as waitresses instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them above the tip-credit rate, but below the minimum wage.

12.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

13.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

14.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

15.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

17.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate Cuban restaurants located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

18.    Plaintiff Bernardina Acteopan ("Plaintiff Acteopan" or "Ms. Acteopan") is an adult individual residing in Queens County, New York.

19.    Plaintiff Acteopan was employed by Defendants at the 23rd Street location from approximately 2005 until on or about December 2016 and from approximately March 2018 until on or about September 2018.

20.    Plaintiff Ana Karen Ramirez Acteopan ("Plaintiff Ramirez" or "Ms. Ramirez") is an adult individual residing in Queens County, New York.

21.    Plaintiff Ramirez was employed by Defendants at the 23rd Street location from approximately September 2011 until on or about August 2012 and from approximately November 2014 until on or about July 2015 and at the New Street location from approximately July 2015 until on or about July 2016.

*Defendants*

22.    At all relevant times, Defendants owned, operated, or controlled two Cuban restaurants, located at 28 East 23rd Street, New York, New York 10010 and 73 New Street, New York, New York 10004 under the name "Sophie's Cuban Cuisine."

23.    Upon information and belief, Mahabir Enterprises LLC (d/b/a Sophie's Cuban Cuisine) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 28 East 23rd Street, New York, New York 10010.

24.    Upon information and belief, Sophie's Restaurant #3 LLC (d/b/a Sophie's Cuban Cuisine) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 73 New Street, New York, New York 10004.

25.    Defendant Patricia Mahabir Santos is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Patricia Mahabir Santos

is sued individually in her capacity as owner, officer and/or agent of Defendant Corporations. Defendant Patricia Mahabir Santos possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

26.     Defendant Eduardo Mareo is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Eduardo Mareo is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Eduardo Mareo possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

27.     Defendant Viviana Santacruz is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Viviana Santacruz is sued individually in her capacity as owner, officer and/or agent of Defendant Corporations. Defendant Viviana Santacruz possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.    Defendant Manuela Matos is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Manuela Matos is sued individually in her capacity as owner, officer and/or agent of Defendant Corporations. Defendant Manuela Matos possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.    Defendant Juanito Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Juanito Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Juanito Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

30.    Defendant Helen Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Helen Doe is sued individually in her capacity as a manager of Defendant Corporations. Defendant Helen Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

31.     Defendant Selena Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Selena Doe is sued individually in her capacity as a manager of Defendant Corporations. Defendant Selena Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

32.     Defendants operate two Cuban restaurants located in the Flatiron and Financial Districts of Manhattan in New York City.

33.     Individual Defendants, Patricia Mahabir Santos, Eduardo Mareo, Viviana Santacruz, Manuela Matos, Juanito Doe, Helen Doe, and Selena Doe, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

34.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

35.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

36.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

37.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

38.    Upon information and belief, Individual Defendants Patricia Mahabir Santos, Eduardo Mareo, Viviana Santacruz, and Manuela Matos operate Defendant Corporations as either alter egos of themselves and/or failed to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

   a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

   b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

   c)  transferring assets and debts freely as between all Defendants,

   d)  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

   e)  operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

   f)  intermingling assets and debts of their own with Defendant Corporations,

   g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

   h)  Other actions evincing a failure to adhere to the corporate form.

39.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled

the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

40.     In each year from 2012 to 2016, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

41.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

42.     Plaintiffs are former employees of Defendants who ostensibly were employed as waitresses. However, they spent over 20% of each shift performing the non-tipped duties described above.

43.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Bernardina Acteopan*

44.     Plaintiff Acteopan was employed by Defendants from approximately 2005 until on or about December 2016 and from approximately March 2018 until on or about September 2018.

45.     Defendants ostensibly employed Plaintiff Acteopan as a waitress.

46.     However, Plaintiff Acteopan was also required to spend a significant portion of her work day performing the non-tipped duties described above.

47.     Although Plaintiff Acteopan ostensibly was employed as a waitress, she spent over 20% of each day performing non-tipped work throughout her employment with Defendants.

48.     Plaintiff Acteopan regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

49.     Plaintiff Acteopan's work duties required neither discretion nor independent judgment.

50.     Throughout her employment with Defendants, Plaintiff Acteopan regularly worked in excess of 40 hours per week.

51.     From approximately October 2012 until on or about September 30, 2014 and from approximately November 2014 until on or about December 2016, Plaintiff Acteopan worked at the 23rd Street location from approximately 7:00 a.m. until on or about 4:00 p.m., Mondays through Fridays and from approximately 8:00 a.m. until on or about 12:00 p.m., Saturdays twice a month (typically 45 to 49 hours per week).

52.     Throughout her employment, Defendants paid Plaintiff Acteopan her wages by check.

53.     From approximately October 2012 until on or about December 2013, Defendants paid Plaintiff Acteopan $6.00 per hour as a waitress and $7.25 per hour doing general duties.

54.     From approximately January 2014 until on or about December 2014, Defendants paid Plaintiff Acteopan $6.00 per hour for three hours a day as a waitress and $8.00 per hour for six hours a day doing general duties.

55.     From approximately January 2015 until on or about December 2015, Defendants paid Plaintiff Acteopan $6.00 per hour for three hours a day as a waitress and $8.75 per hour for six hours a day doing general duties.

56.     From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Acteopan $7.50 per hour three hours a day as a waitress and $9.00 per hour six hours a day doing general duties.

57.     From approximately October 2012 until on or about September 30, 2014 and from approximately November 2014 until on or about December 2016, Defendants did not pay Plaintiff Acteopan any wages for the non-tip work they required her to perform from 8:00 a.m. until on or about 12:00 p.m. two Saturdays per month.

58.     Throughout her employment, Defendants required Plaintiff Acteopan to keep track of time using two separate identification numbers that did not accurately reflect her actual hours worked.

59.     Defendants never granted Plaintiff Acteopan any breaks or meal periods of any kind.

60.     Plaintiff Acteopan was never notified by Defendants that her tips were being included as an offset for wages.

61.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Acteopan's wages.

62.     Defendants took improper and illegal deductions from Plaintiff Acteopan's wages; specifically, Defendants deducted about five sick days that were never taken from Plaintiff Acteopan's weekly wages.

63.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Acteopan regarding overtime and wages under the FLSA and NYLL.

64.     Defendants did not provide Plaintiff Acteopan an accurate statement of wages, as required by NYLL 195(3).

65.     In fact, on at least one occasion, Defendants adjusted Plaintiff Acteopan's paystub so that it reflected that she had worked eight hours less than what she had actually worked that week.

66.     Defendants did not give any notice to Plaintiff Acteopan, in English and in Spanish (Plaintiff Acteopan's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

67.     Defendants required Plaintiff Acteopan to purchase "tools of the trade" with her own funds—including twenty to twenty-five pairs of shoes and about ten to fifteen pairs of shoes.

*Plaintiff Ana Karen Ramirez Acteopan*

68.     Plaintiff Ramirez was employed by Defendants at the 23rd Street location from approximately September 2011 until on or about August 2012 and from approximately November 2014 until on or about July 2015 and at the New Street location from approximately July 2015 until on or about July 2016.

69.     Defendants ostensibly employed Plaintiff Ramirez as a waitress.

70.     However, Plaintiff Ramirez was also required to spend a significant portion of her work day performing the non-tipped duties described above.

71.     Although Plaintiff Ramirez ostensibly was employed as a waitress, she spent over 20% of each day performing non-tipped work throughout her employment with Defendants.

72.     Plaintiff Ramirez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

73.     Plaintiff Ramirez's work duties required neither discretion nor independent judgment.

74.     From approximately November 2014 until on or about July 2015, Plaintiff Ramirez worked at the 23rd Street location from approximately 11:00 a.m. until on or about 3:00 p.m.,

Mondays through Fridays and from approximately 8:00 a.m. until on or about 12:00 p.m., on Saturdays (typically 24 hours per week).

75.    From approximately July 2015 until on or about July 2016, Plaintiff Ramirez worked at the New Street location from approximately 11:00 a.m. until on or about 3:00 p.m., Mondays through Fridays (typically 20 hours per week).

76.    Throughout her entire employment, Defendants paid Plaintiff Ramirez her wages by check.

77.    From approximately November 2014 until on or about July 2015, Defendants paid Plaintiff Ramirez $5.00 per hour.

78.    From approximately July 2015 until on or about July 2016, Defendants paid Plaintiff Ramirez $7.00 per hour.

79.    From approximately November 2014 until on or about July 2015, Defendants did not pay Plaintiff Ramirez any wages for the non-tip work they required her to perform from 8:00 a.m. until on or about 12:00 p.m. every Saturday throughout this time period.

80.    Plaintiff Ramirez was never notified by Defendants that her tips were being included as an offset for wages.

81.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramirez's wages.

82.    Although Plaintiff Ramirez was required to keep track of her time, Defendants required her to record fewer hours than she actually worked. As a result, Plaintiff Ramirez was not compensated for all of the hours that she worked.

83.     Defendants took improper and illegal deductions from Plaintiff Ramirez's wages; specifically, Defendants deducted from Plaintiff Ramirez's wages if she broke plates or cleaning tools and if the orders from customers were wrong.

84.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ramirez regarding overtime and wages under the FLSA and NYLL.

85.     Defendants did not provide Plaintiff Ramirez an accurate statement of wages, as required by NYLL 195(3).

86.     In fact, Defendants adjusted Plaintiff Ramirez's paystubs so that they reflected inaccurate wages and hours worked.

87.     Defendants did not give any notice to Plaintiff Ramirez, in English and in Spanish (Plaintiff Ramirez's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

88.     Defendants required Plaintiff Ramirez to purchase "tools of the trade" with her own funds—including approximately $200 per month on uniforms.

*Defendants' General Employment Practices*

89.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

90.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

91.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

92.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

93.    Defendants required Plaintiffs and all other waitresses to perform general non-tipped tasks in addition to their primary duties as waitresses.

94.    Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

95.     Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

96.    Plaintiffs and all other tipped workers were paid at a rate that was below minimum wage by Defendants.

97.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

98.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

99.     In violation of federal and state law as codified above, Defendants classified Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was below minimum wage when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

100.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

101.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

102.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as waitresses for the tips they received.

103.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

104.    Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

105.    Defendants required Plaintiff Acteopan to use two different identification numbers when she punched in and out so that the records would not show the actual hours she had worked.

106.    Defendants required Plaintiff Ramirez to record less hours than those she had actually worked.

107.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

108.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

109.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

110.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

111.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

112.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

113.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

114.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

115.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

116.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

117.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

118.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

119.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

120.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

121.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

122.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

123.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

124.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

125.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

126.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

127.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

128.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs,

controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

129.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

130.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

131.    Plaintiffs were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

132.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

133.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

134.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

135.    Plaintiffs were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE NOTICE AND RECORDKEEPING**

**REQUIREMENTS OF THE NEW YORK LABOR LAW**

136.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

137.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

138.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

139.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

140.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

141.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

- 22 -

**RECOVERY OF EQUIPMENT COSTS**

142.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

143.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

144.    Plaintiffs were damaged in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION**

**OF THE NEW YORK LABOR LAW**

145.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

146.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

147.    Defendants made unlawful deductions from Plaintiffs' wages; specifically, Defendants deducted sick days that were never taken from Plaintiff Acteopan's wages.

148.    The deductions made from Plaintiffs' wages were not authorized or required by law.

149.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**

**VIOLATION OF THE TIMELY PAYMENT PROVISIONS**

**OF THE NEW YORK LABOR LAW**

150.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

151.     Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

152.     Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)       Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)       Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(k)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)       Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(n)      Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)      Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

October 29, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    /s/ Michael Faillace
       Michael Faillace [MF-8436]
       60 East 42nd Street, Suite 4510
       New York, New York 10165
       Telephone: (212) 317-1200
       Facsimile: (212) 317-1620
       *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

————

Faillace@employmentcompliance.com

October 18, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                              **Acteopan Bernardina**

                                            Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

Date / Fecha:                                   18 de octubre de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 26, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                   Ana Karen  Ramirez  Acteopan

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:               Ana Ramirez

Date / Fecha:                    26 de octubre 2018

*Certified as a minority-owned business in the State of New York*